In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1595

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

TED L. PAPPAS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08 CR 52—**Charles N. Clevert, Jr.**, *Chief Judge.*

ARGUED OCTOBER 8, 2009—DECIDED JANUARY 21, 2010

Before EASTERBROOK, *Chief Judge*, and MANION and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Ted Pappas was indicted for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Pappas pleaded not guilty and filed a motion to suppress evidence seized during a search of his home, as well as statements he made during the execution of the search warrant. The district court granted Pappas's motion to suppress. The government appeals. We reverse.

## I.

In May 2005, law enforcement officers in California executed a search warrant on Michael Golubski's America Online email account. The search revealed that between April and May 2005, Golubski used the email name "ExhibMale39" to send seventeen emails to "longtalks@aol.com," including eleven that contained images of child pornography. Further investigation revealed that the email account "longtalks@aol.com" belonged to Ted Pappas, although in June 2005, Pappas changed his email account to TedP5785@aol.com.

Federal agent Elizabeth Hanson provided this information to an Assistant United States Attorney, and the two discussed the propriety of obtaining a search warrant for Pappas's home. After concluding there was probable cause to obtain a search warrant, Agent Hanson presented a search warrant application and a nine-page affidavit to a magistrate judge. Hanson's affidavit included a summary of her professional experience investigating child pornography. Specifically, Hanson stated that she had ten years' experience investigating sexual exploitation of minors and had conducted numerous forensic examinations of computers in child pornography investigations. Hanson also described the typical behavior of individuals who collect, procure and distribute child pornography. She further detailed the emails sent to Pappas, stating that over a three-week period, Pappas had received eleven emails that included child pornography. Hanson also included a description of the pornographic images of children contained in three

of the eleven email transmissions. Additionally, Hanson noted that Pappas continued to maintain an email account, using the name TedP5785@aol.com.

In November 2006, based on the search warrant application and Hanson's affidavit, a federal magistrate judge issued a search warrant for Pappas's residence. According to the government, during the search, Pappas spoke with agents and admitted he used the screen name "longtalks" to trade adult pornography in chat rooms and via email. He also admitted receiving images and videos of children engaged in sexually explicit conduct, but claimed he had deleted those images. A search of Pappas's computer hard drive, however, uncovered images of child pornography. Agents also discovered that images of child pornography had been saved on a floppy disk but were later deleted; the government was able to recover the images.

Based on the evidence recovered during the search, a grand jury indicted Pappas on two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Pappas pleaded not guilty and filed a motion to suppress the evidence seized during the search and the statements he made during the execution of the warrant. A magistrate judge recommended granting the motion to suppress, and the district court adopted that recommendation and suppressed the evidence seized and Pappas's statements. The government appeals.

## II.

On appeal, the government argues that while it may be questionable whether probable cause supported the issuance of the search warrant, the evidence seized and Pappas's statements are nonetheless admissible under *United States v. Leon*, 468 U.S. 897 (1984).[1] In *Leon*, the Supreme Court articulated the good faith exception to the exclusionary rule, holding that evidence obtained in violation of the Fourth Amendment is nonetheless admissible if the officer who conducted the search acted in good faith reliance on a search warrant. *Id.* at 922-23. "That [an] officer[ ] obtained a warrant is prima facie evidence of good faith." *United States v. Elst*, 579 F.3d 740, 744 (7th Cir. 2009). A defendant may rebut the prima facie evidence of good faith

> by presenting evidence to establish that: (1) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached function, serving merely as a rubber stamp for the police; (2) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (3) the issuing judge was misled by information in an affidavit that the affiant knew was false or would

---

[1] Because the government does not argue that there was probable cause to support the issuance of the search warrant, we need not address that question; instead our focus is on whether a reasonable officer could believe probable cause supported the issuance of the warrant.

have known was false except for his reckless disregard of the truth.

*Id.* (internal quotations and citations omitted).

In this case, Pappas argues, and the district court held, that the affidavit supporting the warrant was so lacking in probable cause that the officers could not rely upon it in good faith.[2] We disagree. Here, the affidavit clearly documented evidence establishing that at least eleven images of child pornography had been sent to Pappas's email account and verifying that Pappas continued to maintain email access (thus indicating continued access to a computer on which child pornography could be stored). Additionally, prior to seeking a warrant, Agent Hanson consulted with an Assistant United States Attorney. Consulting "with the prosecutor prior to applying for [a] search warrant provides additional evidence of [that officer's] objective good faith." *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002). *See also United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996) (stating that obtaining advice of a county attorney is an indication that an officer's reliance on a search warrant was objectively reasonable); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir. 1991) (noting "an officer's consultation with a government attorney is of significant importance to a finding of good faith . . . [and it is] of even greater importance where, as here, a point of law relating to the scope of a Fourth Amendment

---

[2] On appeal, Pappas does not contend that the issuing judge abandoned his judicial role or was misled by the affidavit.

search and seizure was not yet settled at the time the warrant issued"); *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990) (explaining that officer's consultation "with the local district attorney before seeking the search warrant, and then submit[ting] the matter to a neutral magistrate" was "indicative of objective good faith").

In response, Pappas claims that the search warrant application was utterly lacking in probable cause because there is no evidence that Pappas solicited child pornography or that he even read the email messages. Rather, Pappas maintains that because he also received adult pornography from Golubski, the only reasonable inference flowing from the facts is that the emails to him were "advertisements" that do not indicate that he knowingly possessed child pornography. That may be one inference. But an officer could also reasonably believe that the number of email messages containing child pornography sent to Pappas, and the risk inherent in sending even one image of child pornography to anyone other than a willful recipient, was sufficient to establish probable cause for the crime of knowing possession of child pornography. Similarly, while Pappas maintains that the fact that he changed his email account demonstrates that he did not want to receive child pornography, equally plausible is the conclusion that Pappas changed his email account to avoid detection. In fact, given that Pappas waited nearly three months after he received the first email from Golubski to change his email address, and that he received numerous images of child pornography from Golubski, the latter inference seems much more likely.

Pappas further argues that the search warrant application was completely lacking in indicia of probable cause because of the eighteen-month delay between the transmission of the emails (mid-2005) and the issuance of the search warrant (late 2006). While the recency of information contained in a search warrant application is one factor bearing on the question of probable cause, *United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007), there is no bright line for when information is stale. *United States v. Prideaux-Wentz*, 543 F.3d 954, 958 (7th Cir. 2008). Indeed, we recently held that while four-year-old transmissions of child pornography were too stale to provide probable cause, officers could nonetheless rely in good faith on a search warrant issued by a magistrate judge based on those transmissions. *Prideaux-Wentz*, 543 F.3d at 958-59.[3] Similarly, in this case, the officers reasonably could have relied on the search warrant that was based on child pornography sent eighteen months earlier.

Pappas also argues that the officers could not reasonably rely on the warrant because the warrant application included boilerplate language concerning the practices of collectors of child pornography but did not include any evidence Pappas fit that profile. In support of his position, Pappas relies on this court's recent decision

---

[3] The government also cites our nonprecedential decision in *United States v. Doan*, 245 Fed. Appx. 550, 555 (7th Cir. 2007), wherein this court applied the good faith exception to a warrant based on child pornography transmitted seventeen months prior to the issuance of the warrant.

in *Prideaux-Wentz*, 543 F.3d 954. In *Prideaux-Wentz*, the defendant argued that the search warrant affidavit was defective because it only included boilerplate statements about child pornography collectors generally and completely "lacked any information that would indicate that he has the characteristics of a prototypical child pornography collector, and furthermore, that this gap renders any probable cause determination entirely unreasonable." *Id.* at 960. We noted in *Prideaux-Wentz* that an "affidavit must lay a foundation which shows that the person subject to the search is a member of the class." *Id.* (internal quotations omitted). However, we then held that "because the warrant connected Prideaux-Wentz to several email accounts responsible for uploading or possessing child pornography," it did not take "much of an inferential leap to conclude that Prideaux-Wentz might be a collector of child pornography." *Id.* at 961. Accordingly, we concluded that "[t]here was sufficient evidence to link the boilerplate statements regarding child pornographers to the specific characteristics of Prideaux-Wentz." *Id.* at 960.

Pappas's reliance on *Prideaux-Wentz* is misplaced for several reasons. First, he reads too much into that decision. While *Prideaux-Wentz* explained that a search warrant affidavit must lay a foundation showing that the target of the search is a member of the class identified in the warrant, there is no magic "profile" of child pornography "collectors" that must be attested to in a search warrant affidavit. In fact, the moniker "collector" merely recognizes that experts in the field have found that because child pornography is difficult to

come by, those receiving the material often keep the images for years. There is nothing especially unique about individuals who are "collectors" of child pornography; rather, it is the nature of child pornography, i.e., its illegality and the difficulty procuring it, that causes recipients to become "collectors." *See Watzman*, 486 F.3d at 1008 (noting that the agent explained that "individuals who view child pornography typically 'maintain their collections for many years' and 'keep and collect items containing child pornography over long periods of time'"). Thus, as *Prideaux-Wentz* explained, where evidence indicates that an individual has uploaded or possessed multiple pieces of child pornography, there is enough of a connection to the "collector" profile to justify including the child pornography collector boilerplate in a search warrant affidavit. Similarly, here, because Pappas received eleven emails containing child pornography, inclusion of the child-pornography boilerplate was justified.

Pappas's reliance on *Prideaux-Wentz* is also misplaced because we decided that case after the search warrant in this case was issued. Thus, *Prideaux-Wentz* could not have called into question the good faith of the officers involved in the search of Pappas's residence. *See United States v. Adames*, 56 F.3d 737, 747 (7th Cir. 1995) (holding that "the officers could not have known that the warrant was invalid at the time it was executed because [the Supreme Court precedent relied upon by the defendant to invalidate the search warrant] was not decided until more than a year later"). Finally, *Prideaux-Wentz* held that while probable cause was lacking, the evidence

seized was nonetheless admissible under the *Leon* good faith exception to the exclusionary rule. Similarly, the good faith exception applies here and saves from exclusion the evidence discovered during the search of Pappas's home and the statements he made during the execution of the search warrant.

## III.

A magistrate judge issued a search warrant authorizing the search of Pappas's residence. Even if probable cause did not support issuance of this warrant, Agent Hanson demonstrated a prima facie case of good faith by obtaining a warrant in the first instance. Her efforts to consult with an Assistant United States Attorney prior to seeking a warrant further demonstrate her good faith. Although there was some delay between the transmission of child pornography to Pappas and the issuance of the warrant, the delay was not so great as to overcome the presumption of good faith. Nor was there anything impermissible in including information related to the practices of child pornography "collectors," given that numerous images of child pornography were sent to Pappas. Accordingly, the district court erred in granting Pappas's motion to suppress. We REVERSE.