In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-2734

TRALVIS EDMOND,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-03566 — **Matthew F. Kennelly**, *Judge*.

---

ARGUED FEBRUARY 6, 2018 — DECIDED AUGUST 3, 2018

---

Before RIPPLE, SYKES, and BARRETT, *Circuit Judges*.

RIPPLE, *Circuit Judge*. A jury convicted Tralvis Edmond of possession of heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). The Government's case was based largely on evidence that the police had recovered while executing a search warrant at a Chicago apartment. The warrant was supported by the tip of a

confidential informant who reported purchasing heroin from Mr. Edmond at the apartment.

Following his conviction, Mr. Edmond filed a motion under 28 U.S.C. § 2255, seeking collateral relief from federal custody. He claimed that he had been deprived of the effective assistance of counsel because his trial attorney had not filed a motion to exclude the evidence obtained from the search. The district court evaluated this claim under the familiar two-part analysis of *Strickland v. Washington*, 466 U.S. 668 (1984). The court held that Mr. Edmond's trial attorney had performed below an objective standard of reasonableness. It then concluded that, although the search warrant was not supported by probable cause, the good-faith exception to the exclusionary rule saved the evidence from exclusion. Therefore, the court reasoned, Mr. Edmond had not shown that he was prejudiced by his attorney's deficient performance, and his claim of ineffective assistance failed.

Mr. Edmond now challenges the district court's application of the good-faith exception. We agree with the district court that objectively reasonable police officers could have relied in good faith on the search warrant. Because Mr. Edmond has not shown the requisite prejudice under *Strickland*, we affirm the denial of his § 2255 motion.

# I

## BACKGROUND

### A.

On May 19, 2010, Chicago Police Officer John Frano filed a complaint for a search warrant in the Circuit Court of Cook County. The complaint recounted a tip that he had received the day before from a confidential informant, who claimed to

have purchased heroin in a basement apartment at 736 North Ridgeway Avenue in Chicago. According to the complaint, the informant had identified Mr. Edmond as the seller and had described the location of the drugs as hidden under a bed in a shoebox. The shoebox contained twenty to thirty golf ball-sized bags, and each bag was filled with ten to thirteen smaller bags of suspected heroin. The complaint also described Officer Frano's efforts to corroborate this tip: he drove the informant past the building to confirm the location of the drug sale and showed the informant a photograph of Mr. Edmond to confirm the seller's identity. Notably, although the complaint specified the date of the informant's tip, it did not specify clearly the date of the alleged drug sale.[1]

In the complaint, Officer Frano attested to the reliability of the informant, who had provided dependable information about narcotics activities for the past five years. The complaint further explained that, "[o]n over 6 different occasions in the past two months[, Officer Frano] has acted upon the information provided by this [informant,] and on these occasions [Officer Frano] has recovered illegal narcotics."[2] The complaint did not mention the informant's criminal record, that he was facing felony drug charges at the time, or that a state court recently had revoked his bail and issued a warrant for his arrest. At the time, the Chicago Police Department's standard practices did not require the inclusion of informants'

---

[1] The complaint reads, in pertinent part: "On 18 May 2010 RCI [the informant] related to R/O [Officer Frano] that RCI was at the residence of 736 N Ridgeway and in the presence of Edmond, Tralvis E. in the basement apartment." R.3 at 23. It then continues to describe the drug transaction.

[2] *Id.*

criminal histories in warrant applications.[3] Before presenting the complaint to the issuing judge, Officer Frano obtained the approval of the state's attorney's office. He did not, at any time, bring the informant before the judge for questioning.

The judge issued the warrant, and the Chicago Police Department executed a search of the Ridgeway apartment on May 20, 2010. Officers recovered two loaded handguns, three grams of heroin, and eight grams of cocaine. Mr. Edmond was not present during the search but was arrested later. On June 1, 2011, he was charged in a federal indictment with: (1) possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); (2) possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and (3) possession of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

The case proceeded to trial.[4] The Government presented testimony from police officers involved in the search, including Officer Frano. Mr. Edmond did not testify. The jury found him guilty of the firearm and heroin charges but acquitted him of the cocaine charge. Thereafter, the district court imposed a sentence of 84 months' imprisonment. Mr. Edmond filed a direct appeal, at which point his attorney (the same one who represented him at trial) filed a motion to withdraw. We dismissed the appeal under *Anders v. California*, 386 U.S. 738,

---

[3] The Chicago Police Department's policy has since changed.

[4] Prior to the trial, Mr. Edmond filed a motion to suppress post-arrest statements that he had made to Officer Frano. He claimed that he did not waive voluntarily his *Miranda* rights. The court held a suppression hearing, where Officer Frano testified. The defense cross-examined Officer Frano but did not present any of its own witnesses. The court denied the motion; that ruling is not challenged in this appeal.

744 (1967). *See United States v. Edmond*, 560 F. App'x 580 (7th Cir. 2014).

## B.

On April 22, 2015, Mr. Edmond filed a pro se motion under 28 U.S.C. § 2255 to set aside his conviction and sentence. He claimed that he had received ineffective assistance of counsel at trial. In particular, he challenged his attorney's decision not to file a motion to suppress the evidence recovered in the search of the Ridgeway apartment. He submitted that the warrant authorizing the search was not supported by probable cause. As a result, he claimed, the search was unlawful and the evidence was excludable as fruit of the poisonous tree.[5]

The district court ordered an evidentiary hearing on Mr. Edmond's claim and appointed counsel to represent him. The hearing had two parts, which mirrored the familiar two-part test for assessing claims of ineffective assistance of counsel under *Strickland*. First, the court considered whether Mr. Edmond's trial attorney had performed in an objectively unreasonable manner. The court concluded that his attorney's performance fell below the requisite standard because, based on a misunderstanding of the law,[6] the attorney had decided

---

[5] Mr. Edmond also argued that his trial attorney provided ineffective assistance by failing to call him to testify at the suppression hearing regarding his post-arrest statements. Mr. Edmond has not pursued that argument on appeal.

[6] Specifically, the attorney erroneously believed that Mr. Edmond did not have Fourth Amendment standing to challenge the search because he did not live permanently at the Ridgeway apartment, where his girlfriend and children lived. However, as the district court correctly noted, "the defendant's status 'as an overnight guest [was] alone enough to show that he had

not to file a suppression motion. *See Gardner v. United States*, 680 F.3d 1006, 1012 (7th Cir. 2012) (concluding that an attorney's "misapprehension of law" is objectively unreasonable).

The court then held the second part of the hearing to consider the other part of the *Strickland* inquiry: whether Mr. Edmond had suffered prejudice as a result of his attorney's deficient performance. The parties agreed that the evidence seized from the search was critical to the Government's case, so the court focused on "whether Edmond ha[d] shown a reasonable likelihood that a motion to suppress would have been successful had counsel filed it."[7] This inquiry required a showing that the search warrant was not supported by probable cause and that the good-faith exception did not apply to save the evidence despite any constitutional infirmities with the warrant.

The district court first determined that the warrant was not supported by probable cause. It based its decision primarily on the failure of the complaint to set forth clearly the date on which the informant allegedly purchased drugs from Mr. Edmond at the Ridgeway apartment. That omission, the court explained, undermined the issuing judge's ability to determine whether the complaint "reasonably suggests that evidence of a crime might *currently* be found in the location to be searched."[8] Although other factors weighed in favor of finding probable cause, such as the firsthand nature of the

---

an expectation of privacy in the home' that was reasonable and protected under the Fourth Amendment." R.32 at 6–7 (quoting *Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990)).

[7] R.52 at 3–4.

[8] *Id.* at 6 (emphasis in original).

informant's observations, the court did not think that these countervailing considerations overcame the "staleness" of the informant's tip.[9]

Despite this conclusion about probable cause, the court found that the good-faith exception to the exclusionary rule applied. According to that exception, evidence obtained in violation of the Fourth Amendment is nevertheless admissible if the officers conducting the unlawful search relied in good faith on a search warrant. *United States v. Leon*, 468 U.S. 897, 918–23 (1984). Because the receipt of a warrant constitutes prima facie evidence of good faith, Mr. Edmond had the burden to show that the exception should not apply. *See United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010). In an effort to shoulder that burden, he advanced two arguments: first, that the complaint was so lacking in indicia of probable cause as to render official reliance on it entirely unreasonable; and second, that Officer Frano had acted in reckless disregard of the truth by omitting from the complaint damaging information about the informant's criminal history and pending criminal charges.

The court rejected both of these arguments. First, it held that the complaint contained sufficient indicia of probable cause to justify good-faith reliance on the warrant. The court noted that the warrant contained detailed information about the location and packaging of the drugs, Officer Frano's corroboration of both the apartment's location and the seller's identity, and evidence of the informant's recent reliability. Second, the court concluded that Officer Frano had not acted with reckless disregard for the truth. It credited

---

[9] *Id.* (alteration omitted).

Officer Frano's testimony that he had omitted the informant's criminal history based on the then-common practice of the police department and that he was unaware of the informant's recent bail revocation and arrest warrant. The court also considered the informant's proven reliability and that Officer Frano had obtained the approval of the state's attorney before applying for the warrant. Taken together, this evidence persuaded the court that Officer Frano "did not intend to mislead the judge regarding the informant's credibility."[10] Having rejected both of Mr. Edmond's arguments, the court denied his § 2255 motion.

Mr. Edmond now challenges the district court's determination that the good-faith exception applies to defeat his showing of prejudice. He maintains that the trial judge would have granted a motion to suppress and that, therefore, he was deprived the effective assistance of counsel under *Strickland*.

## II

## DISCUSSION

We review de novo the district court's legal conclusions, including its determination that the good-faith exception applies. *United States v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2002). We review the court's underlying factual findings and credibility determinations for clear error. *Id.*

To establish ineffective assistance of counsel, a petitioner must show (1) that his trial attorney's performance fell below an objective standard of reasonableness, and (2) that he suffered prejudice as a result. *Strickland*, 466 U.S. at 687–96. The focus of the present appeal is whether Mr. Edmond suffered

---

[10] *Id.* at 15.

any prejudice from his attorney's failure to file a motion to suppress the evidence seized from the Ridgeway search.[11] The parties agree that this evidence was critical to the prosecution's case. Therefore, in order to demonstrate prejudice, Mr. Edmond must show a reasonable likelihood that, but for his counsel's error, a motion to suppress the evidence would have been granted. *See id.* at 694 (requiring "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

The Government contends that "even if [Mr. Edmond's] attorney had filed a motion to suppress, he would have lost."[12] The Government urges us to apply the good-faith exception to the exclusionary rule set forth in *Leon*. There, the Supreme Court explained that the exclusionary rule is a judicially created remedy designed to protect Fourth Amendment rights by deterring police misconduct. *Leon*, 468 U.S. at 906. Given the rule's prophylactic purpose, "evidence obtained in violation of the Fourth Amendment is nonetheless admissible if the officer who conducted the search acted in good faith reliance on a search warrant." *Pappas*, 592 F.3d at 802 (citing *Leon*, 468 U.S. at 922–23). Because the receipt of a search warrant is prima facie evidence of good faith, the burden falls on the defendant to demonstrate one of the following scenarios:

> (1) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached function, serving merely as a rubber

---

[11] Because we affirm based on the good-faith exception, we need not consider the Government's alternative argument that Mr. Edmond's trial attorney performed in an objectively reasonable manner.

[12] Government's Br. 12.

stamp for the police; (2) the affidavit supporting the warrant was so lacking in indicia of proba- ble cause as to render official belief in its exist- ence entirely unreasonable; or (3) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disre- gard of the truth.

*Id.* (quoting *United States v. Elst*, 579 F.3d 740, 744 (7th Cir. 2009)). Mr. Edmond contends that he has shown both that the complaint was fatally lacking in indicia of probable cause and that Officer Frano acted in reckless disregard of the truth. For the reasons set out below, we cannot accept these contentions.

**A.**

Mr. Edmond first claims that Officer Frano's complaint was so wanting in indicia of probable cause as to render offi- cial reliance on the search warrant unreasonable. Mr. Ed- mond primarily contends that Officer Frano's complaint was "plainly deficient" due to its omission of a "specific 'temporal guidepost' in order to establish probable cause."[13]  He main- tains that no reasonable officer could have relied in good faith on the warrant, given the complaint's lack of temporal infor- mation about the alleged drug sale. Other indicia of probable cause, he submits, fail to overcome the staleness of the infor- mation in the complaint. Although we agree that staleness can undermine an officer's otherwise reasonable reliance on a warrant, the complaint here contained sufficient evidence of

---

[13] Appellant's Br. 12, 15 (quoting *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002)).

timeliness, as well as other indicia of probable cause, to justify application of the good-faith exception.

"Probable cause is established when, considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006). When a complaint is based on an informant's tip, the probable cause analysis turns on five factors: (1) whether the informant acquired firsthand knowledge of the reported events, (2) the amount of detail provided, (3) the extent of corroboration by the police, (4) the interval of time between the reported events and the warrant application, and (5) whether the informant appeared before the issuing judge. *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014). Because probable cause is based on the totality of circumstances, "a deficiency in one [factor] may be compensated for … by some other indicia of reliability." *Id.* (second alteration in original) (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)); *see also United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011) ("[N]o one factor necessarily dooms a search warrant.").

The focus of the parties' disagreement is the fourth factor: the interval of time between the reported events and the warrant application. The district court believed that probable cause did not exist largely because the complaint did not specify *when* the informant was at the Ridgeway apartment. As the court noted, "[s]taleness is highly relevant to the legality of a search for a perishable or consumable object, like cocaine."[14]

---

[14] R.52 at 6 (alteration in original) (quoting *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012)).

This approach makes good sense; probable cause measures the likelihood of uncovering evidence of a crime *at the time of* the search. We also have explained, however, that an issuing judge should not withhold a warrant due to the age of the reported information "[i]f other factors indicate that the information is reliable and that the object of the search will still be on the premises." *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) (alteration in original) (quoting *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987)). Accordingly, if a complaint indicates "ongoing, continuous criminal activity, the passage of time becomes less critical." *Id.* (quoting *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986)).[15]

Although the district court found that the lack of a precise time stamp for the drug sale undermined probable cause, the complaint was not entirely lacking in indicia of timeliness. A reasonable officer, reading the complaint in its entirety, could have interpreted the complaint as timely. Although the district court read the complaint as silent about the date of the alleged sale, it is not objectively unreasonable to read it differently. The complaint states that "[o]n 18 May 2010[, the informant] related to [Officer Frano] that [the informant] was at the residence of 736 N Ridgeway and in the presence of Edmond."[16] While certainly not a model of clarity, this statement

---

[15] *See also United States v. Mitten*, 592 F.3d 767, 775 (7th Cir. 2010) (applying good-faith exception, despite lack of date for one reported drug sale and imprecise date for another reported sale, because complaint indicated pattern of ongoing drug dealing); *United States v. Prideaux-Wentz*, 543 F.3d 954, 958–59, 963 (7th Cir. 2008) (finding no probable cause where complaint relied on stale information, but applying good-faith exception in part because complaint indicated "ongoing continuous criminal activity").

[16] R.3 at 23.

could be interpreted reasonably to mean that the informant was at the Ridgeway apartment on May 18, 2010—not just that the informant passed the information to Officer Frano on that day.[17]

The complaint also contains other indicia of timeliness. For example, in describing the informant's reliability, Officer Frano explained that the informant had provided information leading to the recovery of narcotics on more than six different occasions in the prior two months. This suggests that Officer Frano was meeting regularly with the informant and that the informant's tips had been timely. Officer Frano applied for the Ridgeway warrant on May 19, 2010, one day after the informant told him about the transaction with Mr. Edmond. When combined with the informant's history of providing timely tips, this time frame could support a good-faith belief that the information in the complaint was not incurably stale.

Furthermore, although the district court found that the complaint did not evidence ongoing criminal activity, the complaint could be understood as conveying that a certain amount of future drug deals beyond the single reported sale would occur at the Ridgeway apartment. Indications of "ongoing, continuous criminal activity" render "the passage of time … less critical" to the probable cause analysis. *Lamon*, 930

---

[17] We note parenthetically that we cannot accept the Government's argument for applying the good-faith exception based on Officer Frano's *intent* to communicate the date of the drug sale. *See United States v. Koerth*, 312 F.3d 862, 871 (7th Cir. 2002) (noting that the good-faith analysis is "objective" and "based solely on facts presented to the" issuing judge, without reference to an officer's "subjective intentions or knowledge" (quoting *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988))).

F.2d at 1188 (quoting *Shomo*, 786 F.2d at 984). The complaint
here did not report multiple drug sales and thus is not com-
parable to the affidavits in *United States v. Mitten*, 592 F.3d 767
(7th Cir. 2010), and *United States v. Prideaux-Wentz*, 543 F.3d
954 (7th Cir. 2008).[18] However, it did describe a significant
quantity of drugs at the apartment: twenty to thirty golf
ball-sized bags, each containing ten to thirteen smaller bags of
suspected heroin. Although this fact alone does not establish
a pattern of ongoing criminal activity,[19] such a significant
quantity of individually wrapped drugs reasonably suggests
that Mr. Edmond planned multiple further drug deals.

In the context of the good-faith analysis, we have re-
marked that issuing judges "do not operate in a vacuum,
shielded from knowledge of drug operations in the real
world." *Koerth*, 312 F.3d at 870 (quoting *United States v. Perry*,
747 F.2d 1165, 1169 (7th Cir. 1984)). Just as judges can infer
that "evidence is likely to be found where [drug] dealers live,"
*id.* (quoting *Lamon*, 930 F.2d at 1188), they also can infer that a
significant quantity of individually packaged drugs is likely
to be distributed over time through multiple drug deals, *cf.*
*United States v. Hython*, 443 F.3d 480, 489 (6th Cir. 2006) ("[I]n
some cases, a warrant may be issued on the basis of an infer-
ence."). Assessing the staleness of information in a complaint
is never a mechanical process. *See Prideaux-Wentz*, 543 F.3d at
958 ("There is no bright-line test for determining when

---

[18] *See supra* note 15.

[19] *Cf. United States v. Lamon*, 930 F.2d 1183, 1188–89 (7th Cir. 1991) (finding
a pattern of ongoing criminal activity when an informant recounted drug
sales from both the defendant's residence and automobile and indicated
that the defendant had retained more than an ounce of cocaine after the
latest sale).

information is stale … ." (alteration omitted) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993))); *see also Hython*, 443 F.3d at 485 (acknowledging that drug-distribution crimes "exist[] upon a continuum ranging from an individual who effectuates the occasional sale … to an organized group operating an established … drug den"). Given these practical realities, a reasonable officer could have believed that the complaint indicated a likelihood of multiple future drug sales at the Ridgeway apartment. Accordingly, an officer could have concluded within reasonable bounds that the temporal deficiencies in the complaint were less critical to the probable cause analysis than they would have been under other circumstances.

The other factors informing probable cause cut in both directions. On the one hand, the informant's entire tip was based on firsthand knowledge, and the complaint provided ample detail about where the drugs were hidden and how they were packaged. These facts support a reasonable belief in probable cause.

On the other hand, Officer Frano's efforts to corroborate the tip were minimal; rather than verifying the informant's account through independent means, he sought confirmation from the informant himself. *See United States v. Robinson*, 724 F.3d 878, 884–85 (7th Cir. 2013) (affording little probative value to corroboration where police drove the informant past the location of a reported crime and showed the informant a photograph of the suspect from a police database, which "shed[] little light on the central question" whether the reported crime was committed).[20] *But see United States v. Sims*,

---

[20] *See also United States v. Radovick*, No. 2:13-CR-112-PPS-PRC, 2014 WL 1365434, at *5 (N.D. Ind. Apr. 7, 2014) (describing similar corroboration as

551 F.3d 640, 644 (7th Cir. 2008) (considering an informant's identification of an implicated location as one of many factors weighing in favor of probable cause); *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (same). Lastly, the informant did not appear before the issuing judge when Officer Frano applied for the warrant.

The lack of meaningful corroboration and the unavailability of the informant for questioning generally weigh against a finding of probable cause. *Glover*, 755 F.3d at 816. That said, these factors are primarily relevant to check the informant's credibility and, accordingly, do not undermine good-faith reliance when there is strong, countervailing evidence that the informant is reliable. *Cf. id.* at 818 (noting that omissions about an informant's reliability are less important when the complaint is extensively corroborated).

Here, there was significant evidence of the informant's reliability. In the prior two months, the informant had provided six tips that led to the recovery of illegal narcotics. *Cf. United States v. Searcy*, 664 F.3d 1119, 1123 (7th Cir. 2011) (finding informant reliable where "the informant's previous dealings with the police led to three arrests in the past six months"). Furthermore, Officer Frano credibly testified that the informant had never provided false information in the past. Given the informant's positive track record, a reasonable officer could have thought that the complaint gave rise to probable cause despite the weak corroboration and the informant's

---

"a meaningless exercise because essentially all it meant was the informant was corroborating himself").

absence before the issuing judge.[21] "It is also noteworthy that Officer [Frano] sought and obtained the approval of the … State's Attorney before presenting his warrant request to the" issuing judge. *Mitten*, 592 F.3d at 776 n.4; *see also Pappas*, 592 F.3d at 802.

When assessed in its entirety, the complaint was not so lacking in indicia of probable cause as to render a police officer's reliance on the validity of the warrant objectively unreasonable. A litigant "establishes unreasonable reliance [on a warrant] if 'courts have clearly held that a materially similar [complaint] previously failed to establish probable cause' or the [complaint] is 'plainly deficient'" on its face. *Glover*, 755 F.3d at 819 (quoting *United States v. Woolsey*, 535 F.3d 540, 548 (7th Cir. 2008)). We do not have here the kind of stale and conclusory complaint that we have held cannot support good-faith reliance. *See, e.g.*, *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004) (declining to apply the good-faith exception where a "barebones affidavit" stated merely that "three months earlier an informant had bought 'a quantity of crack' … at a house believed to be [the petitioner's] residence," with no indication of the quantity of drugs or the reliability of the informant). Even though the district court invalidated the warrant due to temporal deficiencies in the

---

[21] Contrary to Mr. Edmond's arguments, the informant's criminal history and pending criminal charges do not necessarily undercut the reliability of his tip. *See Mitten*, 592 F.3d at 774 ("A motive to curry favor[] … does not necessarily render an informant unreliable." (quoting *United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005))); *Koerth*, 312 F.3d at 870 (indicating that "*statements against [one's] penal interest*" tend to be reliable and that an informant with a motive "to strike a bargain with the police[ may have] a strong incentive to provide accurate and specific information" (emphasis in original)).

complaint, those deficiencies were "not so egregious as to render [the officer's] belief in the warrant's validity unreasonable." *Mitten*, 592 F.3d at 773. We therefore cannot accept Mr. Edmond's first argument.[22]

### B.

Mr. Edmond next submits that the good-faith exception should not apply because Officer Frano acted in reckless disregard of the truth. He emphasizes that the complaint does not mention the informant's criminal history, pending

---

[22] Mr. Edmond encourages us to follow *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011), and *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), where the Fourth and Sixth Circuits declined to apply the good-faith exception to save evidence from tainted searches. Mr. Edmond fails to recognize, however, the critical differences between the warrant applications in those cases and the complaint here. Unlike Officer Frano's complaint, which included some indicia of timeliness, the applications in both *Doyle* and *Hython* did not include any indication of the time frame in which the reported events occurred. *See Doyle*, 650 F.3d at 463, 475 n.16 (noting that the warrant application provided "zero indication as to when [the alleged crime] was committed," and the lieutenant who drafted the application admitted that "no time frame whatsoever" was given to the issuing judge); *Hython*, 443 F.3d at 486 ("[T]he affidavit offers *no clue* as to when this single controlled buy took place." (emphasis added)).

Furthermore, in both *Doyle* and *Hython*, there was scant *other* evidence of probable cause to compensate for the lack of temporal information. *See Doyle*, 650 F.3d at 463 (noting that the affidavit "failed to indicate that the pictures allegedly possessed … were in fact pornographic," thus omitting an important "indication that the [alleged] crime had been committed"); *Hython*, 443 F.3d at 486 n.1 (noting that affidavit did "not establish the reliability of either the tipster or the … supplier" and did not "make sure that they were not carrying drugs at the time of the controlled buy"). Not only did Officer Frano's complaint include some indicia of timeliness, it also included detailed information about the alleged crime and a proven record of the informant's past reliability.

criminal charges, or recent bail forfeiture and arrest warrant. These omissions, he claims, distorted the issuing judge's understanding of the informant's credibility and, therefore, the finding of probable cause.

"We review the district court's determinations of fact, including the determination of deliberate or reckless disregard for the truth, for clear error." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013). "A showing of reckless disregard requires more than a showing of negligence and may be proved from circumstances showing obvious reasons for the affiant to doubt the truth of the allegations." *Id.* at 650. Here, in evaluating Officer Frano's testimony, the district court was conducting "a subjective inquiry [into] the officer's state of mind." *Id.* On appeal, our task is not to repeat this same inquiry; rather, we must "determine whether, based on the totality of the circumstances, it was reasonable for the district court to conclude that law enforcement did not doubt the truth of the [complaint]." *Id.*

As part of the hearing on Mr. Edmond's § 2255 motion, Officer Frano testified about his preparation of the complaint and explained why he had omitted the challenged information. Officer Frano readily admitted that, when preparing the complaint, he knew about the informant's criminal history and pending drug charges. He explained, however, that the Chicago Police Department did not require officers to include this information at the time and that he had no reason to question the informant's credibility. *See United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) ("[A]n informant's criminality

does not in itself establish unreliability.").[23] Notably, the informant never had given him false information, and the informant's prior convictions and pending charges did not relate to crimes of untruthfulness.[24]

Officer Frano also testified that, at the time of the probable cause hearing, he was unaware of the informant's recent bail revocation and outstanding arrest warrant.[25] Although Mr. Edmond presented a criminal history report that indicated that an arrest warrant had been issued for the informant days before the probable cause hearing, the court believed Officer Frano's testimony that he was unaware of the outstanding warrant at that time. The court also took account of the fact that Officer Frano did not "get [the informant] off the hook" after obtaining the warrant; indeed, the informant was sentenced to one year in prison for the felony drug charges.[26] The court credited these explanations and found that Officer Frano did not act in reckless disregard of the truth.

The district court did not clearly err in crediting Officer Frano's testimony that "he was not trying to hide

---

[23] We do not suggest, however, that such information is not relevant and probative in the overall assessment of an application for a warrant. *See United States v. Glover*, 755 F.3d 811, 817–18 (7th Cir. 2014).

[24] It is again noteworthy that Officer Frano obtained the approval of the state's attorney before applying for the warrant, even though the complaint did *not* mention the informant's criminal history. *See United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010).

[25] Evidence of the arrest warrant "bore directly" on the informant's credibility. *United States v. Williams*, 718 F.3d 644, 653 (7th Cir. 2013).

[26] R.52 at 13.

anything from the judge"[27] or "mislead the judge regarding the informant's credibility."[28] We have considered the totality of the circumstances, including the informant's proven reliability, the standard practices of the police department at the time, and the officer's plausible testimony. Based on this record, it was entirely reasonable for the court to conclude that Officer Frano did not doubt the truth of the allegations in the complaint. Accordingly, we reject Mr. Edmond's claim that Officer Frano acted in reckless disregard of the truth.

## Conclusion

Despite the temporal deficiencies in Officer Frano's complaint, we are confident that an objectively reasonable officer could rely in good faith on the resultant search warrant. The complaint contained some indicia of timeliness, and, when combined with the other evidence of probable cause, it justified good-faith reliance by the officers executing the search. Furthermore, the district court did not commit clear error in assessing Officer Frano's state of mind when he prepared the complaint.

Because the court properly applied the good-faith exception, Mr. Edmond has failed to demonstrate any prejudice resulting from his attorney's failure to file a motion to suppress. He therefore has not satisfied the test under *Strickland* for establishing ineffective assistance of counsel. Accordingly, we affirm the district court's denial of his § 2255 motion.

AFFIRMED

---

[27] *Id.*

[28] *Id.* at 15.