**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 3, 2021
Decided August 9, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 20-3264

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 1:19-cr-10005 |
| ADAM L. WARE, <br> *Defendant-Appellant*. | Joe Billy McDade, <br> *Judge*. |

**O R D E R**

When, pursuant to a warrant issued by a state-court judge, officers from the Peoria, Illinois, police department searched the home of Adam Ware, they found drugs, cash, and firearms. Ware wound up facing federal charges, in the course of which he challenged the validity of the search warrant. The district court rejected his argument, however, prompting Ware conditionally to plead guilty while preserving his right to appeal the denial of his motion to suppress. See FED. R. CRIM. P. 11(a)(2). On appeal, Ware argues both that the warrant was not supported by probable cause and that the good-faith exception recognized by *United States v. Leon*, 468 U.S. 897 (1984), is

unavailable. We conclude that the district court properly applied the rule of *Leon*, and so on that basis we affirm.

## I

The police had their eye on Ware for some time before the search we mentioned. At a traffic stop in May 2018, a dog sniff alerted officers to the presence of narcotics. A search of his vehicle turned up $18,000 in cash, wrapped in rubber bands. Between July 2018 and February 2019, the police received at least three anonymous tips suggesting that Ware was distributing drugs from his home. The police also confirmed that Ware was on parole and that he had provided 1103 S. Warren Street in Peoria as his home address.

More suspicious activities followed. On February 6, 2019, Officer Matthew Lane tailed Ware as he drove from the Warren Street residence to Millman Street, where he stopped. Lane observed an unknown man enter Ware's car, stay for five minutes, and then leave. When Ware drove away, Lane briefly lost sight of his vehicle, but he saw it at 1103 S. Warren shortly thereafter.

Along with Officer Erin Barisch, Lane stayed at the house and maintained surveillance on it. About 45 minutes later, Ware's vehicle drove off again; Lane and Barisch reported this to other police officers. Two officers pulled Ware over after he turned without signaling 100 feet before an intersection (as required by Illinois law). During the traffic stop, the officers asked Ware to consent to a search, after they noticed an open cup of a liquid that appeared to be alcoholic in the car. Ware consented, and the officers found 4.4 grams of cocaine and $1,140 in his pockets.

Later that day, Lane decided to get a search warrant for Ware's home. He prepared an affidavit, which included the following information:

- In May 2018, after a dog sniff alerted officers to possible drugs in Ware's vehicle, the officers found $18,000 in cash wrapped in rubber bands, which Lane said (based on his training and experience) was "consistent with how narcotics dealers bundle their currency."
- At least three times since July 2018, an anonymous caller said that "Adam Ware was still dealing narcotics and storing them" at his Warren Street residence.
- Ware was currently on parole for "manufacturing/delivering 15-100 grams of cocaine" and had "7 dangerous drug arrests with 5 convictions."

- Lane observed what he believed to be a drug transaction on February 6, 2019, when Ware drove from Warren Street and stopped at Millman Street, based on the short meeting with another man at Millman Street.
- About 45 minutes after reestablishing surveillance at 1103 S. Warrant Street, Ware again drove away from the residence and shortly thereafter committed a traffic violation.
- During the stop for the traffic violation, officers discovered 4.4 grams of cocaine and $1,140.

Lane also stated that Ware lived at 1103 S. Warren, even though Ware had given a different address when he was arrested. The affidavit concluded that, based on his training and experience, which included training and working as a Drug Enforcement Administration task force officer, Lane believed that evidence of illegal drug activity would likely be found at 1103 S. Warren. Lane then met with a state circuit judge at a restaurant and presented this affidavit; the judge issued the requested warrant.

Upon obtaining the warrant, Lane and some other officers immediately searched the Warren Street residence. They found over five kilograms of cocaine, 86 grams of cocaine base, $200,000 in cash, firearms, and proof that Ware resided there. Ware was then charged in federal court with possessing controlled substances with intent to distribute, 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c), and possessing a firearm as a felon, 18 U.S.C. § 922(g).

Early in the proceedings, Ware moved to suppress all evidence that had been seized from the Warren Street house, as well as the evidence from the February 6, 2019, traffic stop. The district court held an evidentiary hearing, at which Lane and Barisch, along with the officers who made the February 6 stop, all testified. Their testimony focused primarily on the February 2019 surveillance and traffic stop. The court also heard oral argument on Ware's motions. His attorney made several points: Lane's affidavit relied on stale, uncorroborated information; nothing but speculation about the interaction on Millman Street pointed to drugs; and his past drug convictions and possession of the 4.4 grams of cocaine did not support an assumption that drugs were inside his house. Ware also urged that the basis of the warrant was so flimsy that *Leon* could not save it.

The district court denied the motion to suppress the evidence from Ware's home. It acknowledged that Lane had a history of shoddy warrant applications, and that a number of judges had expressed frustration over Lane's weak affidavits. On the other hand, the court found in this particular affidavit enough indicia of probable cause to permit the team of officers to rely on the warrant in good faith. (The court made no

secret of its view of the warrant: what it said was "the good-faith exception will salvage this case," just as it had done in an earlier case.) It singled out the cocaine and the large sum of cash that the officers recovered during the traffic stop, after they had observed Ware drive from his home and possibly conduct a drug transaction. This was enough at least for *Leon*, if not for an acceptable warrant. The court concluded by reiterating that it did not endorse Lane's unsatisfactory affidavits.

## II

On appeal, Ware continues to assert that the warrant was not supported by probable cause and that the affidavit was so faulty that it did not even support the good-faith exception to the exclusionary rule. Because the district court relied exclusively on the good-faith exception, we begin (and end) with that theory. We do not address either the stand-alone sufficiency of the warrant, nor the government's argument (newly minted on appeal) that probable cause was not needed for the search of the home because of Ware's status as a parolee.

Ware concedes that an officer's decision to obtain a warrant is *prima facie* evidence of good faith. See *Edmond v. United States*, 899 F.3d 446, 452 (7th Cir. 2018). That presumption is rebutted here, he contends, because the affidavit was "so lacking in indicia of probable cause" that a reasonable officer would not have believed that the search warrant was adequately supported. See *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002). To support that contention, Ware emphasizes the fact—also noted prominently by the district court—that courts have previously admonished Lane for his inadequate affidavits.

We can assume, favorably to Ware, that an officer as seasoned as Lane, and one who has been criticized in the past, should have known better than to submit such a sparse affidavit to justify invading a person's home. Nevertheless, that does not dispose of the good-faith issue. The affidavit must be judged objectively, based on the information it did contain; courts do not privilege affidavits drafted by favored officers, or disregard those drafted by people who are normally sloppy. With that in mind, we agree with the district court that there were just enough indicia of probable cause in Lane's affidavit to permit the good-faith exception to apply. The officers' observations of Ware driving from his home to meet briefly with a person who climbed into his car, and the discovery of 4.4 grams of cocaine and over $1,000 in cash on Ware's body shortly thereafter, combined with Ware's criminal history, would allow a reasonable officer to believe that the search warrant was properly issued.

Ware's arguments to the contrary do not meet the demanding standard for rebutting the presumption of good faith that arose when Lane sought the warrant. See

*Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) ("the threshold for establishing [the] exception [to the presumption] is a high one, and it should be"). His attacks on the district court's reasoning primarily rehash his arguments that the affidavit failed to establish probable cause. But we assume probable cause was lacking if we reach the *Leon* argument. The point of *Leon* is that not all evidence obtained without probable cause must be suppressed. Ware's strongest argument for bad faith—Lane's track record—cannot overcome the cumulative signals to an objective officer that Ware was engaged in the drug trade, and that evidence of those activities was likely to be at his home.

The district court thus correctly denied Ware's motion to suppress. With that resolved, his convictions and his 180-month sentence stand as well.

AFFIRMED.