EASTERBROOK, Circuit Judge.
Police in Wisconsin arrested Damian Patrick while he was in a car on a public street and found him armed. That led to this federal prosecution, because Patrick’s criminal record made it unlawful for him to possess firearms. 18 U.S.C. § 922(g)(1). The district court denied his motion to keep the gun out of evidence. 2015 WL 106158, 2015 U.S. Dist. Lexis 1421 (E.D. Wis. Jan; 7, 2015), approving a magistrate judge’s recommendation, 2014 U.S. Dist. Lexis 179522 (E.D. Wis. Sept. 30, 2014). Patrick pleaded guilty but reserved the opportunity to contest the validity of his arrest, and thus the validity of the gun’s seizure. He now appeals from the 57-month sentence he received.
*542 Patrick was serving a term of parole that followed his release from state prison. He did not comply with the conditions of his release, and a warrant was issued for his arrest. (He does not contest that warrant’s validity.) In an effort to find Patrick, Milwaukee’s police obtained a second warrant, which authorized them to locate Patrick using cell-phone data. Patrick’s cell phone revealed his location, which enabled the police to find him.
Patrick attempts to undermine the validity of the location-tracking warrant by contending that his person was not contraband or the proceeds of a crime, and that it therefore was off limits to investigation. That sounds like an attempt to resurrect the “mere evidence” doctrine that the Supreme Court disapproved in Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Hayden authorized the use of warrants to get evidence to locate a wanted person. See also Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (search warrant to enter house to look for person to arrest). Police were entitled to use a warrant to obtain data that would help them track down Patrick’s location.
Indeed, they were entitled to arrest him without a warrant of any kind, let alone the two warrants they had. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), holds that probable cause alone is enough for an arrest in a public place. A warrant is necessary only when the police need to enter a private area to capture the wanted person. See Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Because Patrick was visible to the general public, he did not have any privacy interest in his location at the time.
More: the Supreme Court recently held that a valid arrest warrant precludes the suppression of evidence seized in an arrest, even if the arrest was set in motion by officers who had neither probable cause nor knowledge of the warrant. Utah v. Strieff, — U.S. -, 136 S.Ct. 2056, 195 L.Ed.2d 400 (2016). Strieff tells us that, if the police had stopped Patrick’s car for no reason at all and learned only later that he was a wanted man, the gun would have been admissible in evidence. The officers who nabbed Patrick, by contrast, had both probable cause to believe that he was a fugitive from justice and knowledge of the arrest warrant. The gun cannot be less admissible than in Strieff, even if we knock out the means used to track his location.
Because Patrick was arrested in a public place, and the arrest was supported by both probable cause and a valid arrest warrant that had been issued before any effort to learn his location (an effort that therefore could not “taint” the arrest in the parlance of the exclusionary rule), we need not resolve some difficult- issues posed by a fact that came to light while the case was in this court. After Patrick filed his opening brief, the prosecutor revealed that Patrick’s location had been pinned down using data from a cell-site simulator. That device (often called a Stingray, the trademark of one brand) pretends to be a cell-phone access point and, by emitting an especially strong signal, induces nearby cell phones to connect and reveal their direction relative to the device. Here is a description from the Department of Justice:
Cell-site simulators ... function by transmitting as a cell tower. In response to the signals emitted by the simulator, cellular devices in the proximity of the device identify the simulator as the most attractive cell tower in the area and thus transmit signals to the simulator that identify the device in the same way that they would-with a networked tower.
*543 A cell-site simulator receives and uses an industry standard unique identifying number assigned by a device manufacturer or cellular network provider. When used to locate a known cellular device, a cell-site simulator initially receives the unique identifying number from multiple devices in the vicinity of the simulator. Once the cell-site simulator identifies the specific cellular device for which it is looking, it will obtain the signaling information relating only to that particular phone. When used to identify an unknown device, the cell-site simulator obtains signaling information from non-target devices in the target’s vicinity for the limited purpose of distinguishing the target device.
By transmitting as a -cell tower, cell-site simulators acquire the identifying information from cellular devices. This identifying information is limited, however. Cell-site simulators provide only the relative signal strength and general direction of a subject cellular telephone; they do not function ás a GPS locator, as they do not obtain or download any location information from' the device or its applications. Moreover, cell-site simulators used by the Department must be configured as pen registers, and may not be used to collect thé contents of any communication, in accordance with 18 U.S.C. § 3127(3). This includes any data contained on the phone itself: the simulator does not remotely capture emails, texts, contact lists, images or any other data from the phone. In addition, Department cell-site simulators do not provide subscriber account information (for example, an account holder’s name, address, or telephone number).
Department of Justice Policy Guidance: Use of Cell-Site Simulator Technology (Sept. 3, 2015) at 2. See also the Wikipedia entry at < en.wikipedia.org/wiki/Stin-gray_phonei_tracker >.
If the Department’s description is accurate (a question not explored in this litigation) law-enforcement officials get : the same sort of information that a phone company could provide using its own facilities, and they get it in real time rather than waiting for the phone company to turn over data. But instead of collecting information on just one person, as the warrant in this proceeding entitled the police to learn Patrick’s location, a cell-site simulator collects the relative location of everyone whose phone is induced to connect to the simulator—though it may discard that information before alerting officials to the presence of the sought-after person (just as the phone company, which has location data about all of its customers, would disclose only one person’s location).
One potential question posed by use of a cell-site simulator would be whether it is a “search” at all, or instead is covered by Smith v. Maryland, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), and United States v. Knotts, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). The former holds that a pen register is not a search because it reveals the making of a call, and the number called, but not the call’s communicative content. The latter holds that the use of a beeper is not a search, because it reveals a suspect’s location but nothing else. Recent decisions such as United States v. Graham, 824 F.3d 421 (4th Cir. 2016) (en banc), and United States v. Carpenter, 819 F.3d 880 (6th Cir. 2016), apply these principles to hold that tracking a person via data from phone companies is not a search within the scope of the Fourth Amendment. (Graham involved historical cell-tower location .information and Carpenter involved “transactional records” from phone companies, so both cases dealt with the sort of information covered by the location warrant in this proceeding.) Police freely use databases, *544 containing information such as the addresses associated with automobile license plates and persons licensed to drive, to track down suspects; they search trash for credit card receipts showing where he made purchases; they consult a suspect’s relatives and friends (and sometimes his enemies) to learn his whereabouts; no one thinks that those methods require a search warrant.
A contrary line of argument analogizes cell-site simulators to GPS locators, which are treated as searches when police enter private property to install them, see United States v. Jones, 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), and may be searches when used for extended durations even if installed with a vehicle owner’s consent, id. at 954-64 (concurring opinions of Sotomayor and Alito, JJ.). If a cell-site simulator is like a GPS tracker, and if the approach of the concurring opinions in Jones is adopted, then it would be necessary to know how long the police used a simulator while searching for, Patrick and just how accurate is the location information it provides. (Is it information that leaves uncertainty about where in several city blocks a suspect may be, such as the beeper in Knotts, or is it closer to the precise location supplied by a GPS tracker?) Cf. Kyllo v. United States, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) (thermal image of the inside of a house is a search, given a person’s strong privacy interest in his dwelling).
The United States has conceded for the purpose of this litigation -that use of a cell-site simulator is a search, so we need not tackle these questions. The parties join issue, however, on the significance of the fact that police did not reveal to the state judge who issued the location-tracking warrant that they planned to use a cell-site simulator—indeed, implied that they planned to track him down using his phone company’s data. Patrick says that leaving the judge in the dark (perhaps misleading the judge by omitting a potentially material fact) makes the location-tracking warrant invalid. This poses the question whether a judge is entitled to know how a warrant will be executed.
The Fourth Amendment requires that warrants be based “upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” The Supreme Court stated in Dalia v. United States, 441 U.S. 238, 256, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979), that neither constitutional text nor precedent suggests that “search warrants also must include a specification of the precise manner in which they are to be executed.” The manner of search is subject only to “later judicial review as to its reasonableness.” Id. at 258, 99 S.Ct. 1682. And the Justices added in Richards v. Wisconsin, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), that courts cannot limit a warrant so as to foreclose a particular means of execution. In Richards the police sought a warrant that would have authorized a no-knock entry to conduct a search. The judge denied that request but issued a warrant for a regular search. After the police conducted a no-knock entry anyway, the Court held that this was proper because it was reasonable to carry out the search that way under the circumstances.
This means that the-police-could have sought a warrant authorizing them to find Patrick’s cell phone and kept silent about how they would do it. Or affidavits and the warrant itself might have said that “electronic means that reveal locations of cell phones” will be used. Professor Kerr has concluded from Dalia and Richards, and other considerations, that the Fourth Amendment forbids judges to attempt to regulate, ex ante, how a search must be *545 conducted, and confines the judiciary to ex post assessments of reasonableness. Orin S. Kerr, Ex Ante Regulation of Computer Search and Seizure, 96 Va. L. Rev. 1241, 1260-71 (2010).
We can imagine an argument that it will often be unreasonable to use a cell-site simulator when phone company data could provide what’s needed, because simulators potentially reveal information about many persons other than the suspects. (The contrary. argument is that, data from simulators is current, while data relayed through phone-companies’ bureaucracies may arrive after the .suspect has gone elsewhere.) But if the problem with simulators is that they are too comprehensive, that would not lead to suppression— though it might create a right to damages by other persons whose interests were unreasonably invaded. Patrick is not entitled to invoke the rights of anyone else; suppression is proper only if the defendant’s own rights have been violated. See, e.g., United States v. Payner, 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980).
Patrick contends that, even if ex ante authorization of the method is unnecessary, the police must be candid with the judiciary when they' mention1 potential methods of executing a search warrant. He seeks, at a minimum, a remand to explore those questions, after the fashion of a Franks hearing (see Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)), at which the court would decide whether the warrant still would have issued if the affidavits had been more forthcoming.
But for the reasons given earlier we conclude that the answers do not control this appeal. A person wanted on probable cause (and an arrest warrant) who is taken into custody in a public place, where he had no legitimate expectation of privar cy, cannot complain about how the police learned his location. Recall that the cell-site simulator (unlike the GPS device in Jones) was not used to generate the probable cause for arrest; probable cause to arrest Patrick predated the effort to locate him. From his perspective, it is all the same whether a paid informant, a jilted lover, police with binoculars, a bartender, a member of a rival gang, a spy trailing his car after it left his driveway, the-phone company’s cell towers, or a device pretending to be a cell tower, provided location information. A fugitive cannot be picky about how' he is run to ground. So it' would be inappropriate to use the exclusionary rule, even if the police should have told the judge that they planned to use a cell-site simulator to execute the location warrant.
The Department of Justice announced last September that in the future it would ordinarily seek a warrant, plus an order under the pen-register statute, 18 U.S.C. § 3123, before using a cell-site simulator, but it has not conceded that this is constitutionally required. Questions , about whether use of a simulator is a search, .if so whether a warrant authorizing this method is essential, and whether in a particular situation a simulator is a reasonable means of executing a warrant, have yet to be addressed by any United States court of appeals. We think it best to withhold full analysis until these issues control the outcome of a concrete case.
Affirmed