In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-2686

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KYLE S. MATTHEWS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:18-cr-30102-NJR-1 — **Nancy J. Rosenstengel**, *Chief Judge.*

_____

ARGUED MARCH 2, 2021 — DECIDED AUGUST 27, 2021

_____

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

RIPPLE, *Circuit Judge.* The Clinton County, Illinois, Sheriff's
Office executed a search warrant on a property where
Kyle Matthews lived in a camper trailer. The warrant author-
ized the police to search every structure on the premises in the
belief that Mr. Matthews lived on and had access to the whole
property. The Sheriff's Office, however, had not offered the
issuing judge much information to substantiate this belief.

The evidence found during the search led to a federal indictment, and Mr. Matthews moved to exclude the fruits of the search. The district court held that the warrant was not supported by probable cause to believe that any of the suspected crimes were linked to the property. The district court nevertheless concluded that the good-faith exception to the exclusionary rule applied and therefore denied the motion to suppress. Mr. Matthews pleaded guilty to possessing an unregistered short-barreled rifle that had been found at his home, but he conditioned his plea on an appeal of the denial of the motion to suppress the evidence.

We affirm the judgment of the district court. An objectively reasonable officer, having consulted with the State's Attorney in the preparation of the complaint and affidavit accompanying the application for the warrant, could have relied in good faith on the search warrant that he obtained from a judge. The warrant here, although incomplete, was not so utterly lacking in indicia of probable cause that suppression is justified.

# I
## BACKGROUND

### A.

On Saturday, March 31, 2018, Michael Long—an employee at an auto-parts store in Carlyle, Illinois—overheard his coworker discussing pipe bombs with Mr. Matthews in the store. Long heard the two men share their excitement about a bomb that they had detonated the previous day; they also discussed where to place another bomb that Mr. Matthews appeared to be carrying with him. They considered a local church and a school, as well as a competing auto-parts store and a car dealership.

Concerned about the danger that these two men and their plan posed, Long called the Clinton County Sheriff's Office late on Sunday evening. Detective Sergeant Charles Becherer opened an investigation. He interviewed Long, who explained that Mr. Matthews was a frequent customer and that he knew Mr. Matthews owned a "highly modified" AR-15 with a silencer, lived in a camper trailer behind "the old Fin & Feather Restaurant," worked on his cars in the nearby shed, and had "free reign of the property."[1] Detective Becherer also consulted with his colleagues in the Sheriff's Office and learned that someone living near the Fin & Feather restaurant had called about an explosion that past Friday and that Mr. Matthews's public social-media posts showed that he possessed explosive materials. Another detective reported that he had spoken with a local resident who said "the word on the street" was that Mr. Matthews possessed bombs.[2]

Following his regular practice, Detective Becherer promptly consulted with the State's Attorney, who began drafting a complaint for a search warrant and a supporting affidavit. The affidavit outlined the conversation Long had overheard at the store (but not the rest of Detective Becherer's interview) and listed the other officers' discoveries. The complaint sought authorization to search all buildings and structures on the property of the former Fin & Feather restaurant at 21000 North Emerald Road, including the motor home and camper trailer behind the restaurant building, for any explosives, explosive materials, firearms, or ammunition. This

---

[1] R.45 at 1.

[2] R.29-2 at 1.

motor home and camper trailer, the complaint asserted, were "believed to be occupied by persons including Kyle S. Matthews … who is also believed to have access to all other structures and building [sic] situated on the premises."[3] Nothing in the complaint or affidavit explained specifically how Detective Becherer or the State's Attorney had come to this belief. Rather, the affidavit stated generally that Detective Becherer had, "in the course of [his] investigation … obtained the information contained herein, some by personal interviews and some through other law enforcement officers."[4]

On Monday morning, the State's Attorney and Detective Becherer completed the complaint and submitted it to a judge of the Circuit Court of Clinton County, Illinois. In his affidavit, Detective Becherer again stated only that the buildings pictured were "believed to be the residence of Suspect."[5] Attached to the affidavit were pictures of the Fin & Feather property that Detective Becherer had taken earlier that morning, but the pictures included no clearly identifying features, such as a street number. After reviewing the exhibits, the judge heard testimony from Long, who summarized again the conversation he had overheard and identified Mr. Matthews from a photograph. Detective Becherer also testified. He reaffirmed and signed his affidavit before the judge, and explained his intent to search "the entire property where [Mr. Matthews has] been staying which is at the Fin and Feather restaurant," including the several outbuildings,

---

[3] R.29-1 at 1.

[4] R.29-2 at 1.

[5] *Id.* at 2.

because it was his "understanding [that] Mr. Matthews has access to all those places."[6] The judge determined there was probable cause to believe Mr. Matthews had materials to commit terrorism, among other crimes, stored at the Fin & Feather property and signed the warrant.

Just over an hour later, a joint team including Detective Becherer and members of the Clinton County Sheriff's Office, other local law enforcement agencies, the Illinois Secretary of State Police Hazardous Device Unit, and the Federal Bureau of Alcohol, Tobacco, and Firearms arrived at the old Fin & Feather restaurant to execute the search warrant. They found multiple firearms, silencers, a pipe bomb, and more explosive materials. Mr. Matthews was present at the time of the search, as were two other individuals.

**B.**

A grand jury later indicted Mr. Matthews for possessing a machine gun, 18 U.S.C. § 922(o), an unregistered silencer, 26 U.S.C. § 5861(d), and an unregistered short-barreled rifle, *id.*

Mr. Matthews moved to suppress the evidence obtained from the search of the Fin & Feather property. The warrant was fatally overbroad, he asserted, because it extended to every building on the property, and it otherwise failed to establish a nexus between his alleged illegal activity and the property. The Government asked the district court to deny the motion to suppress solely because Detective Becherer had executed the warrant in good faith. It did not maintain that the warrant was supported by probable cause.

---

[6] R.29-3 at 8, 9.

Although the Government relied on the good faith exception to the exclusionary rule, the district court nevertheless determined that it was appropriate to examine the probable-cause question and to determine whether the warrant was invalid. The evidence convinced the district court that the state court judge and Sheriff's Office had reason to suspect that Mr. Matthews might have been involved in criminal activity. The district court noted, however, that Detective Becherer had offered the state court judge little evidence linking either Mr. Matthews or his suspected crimes to the Fin & Feather property, let alone to every single structure on the property.

The district court then considered whether the good-faith exception to the exclusionary rule applied. This exception permits the admission of evidence obtained in violation of the Fourth Amendment if the officers conducted the search in good-faith reliance on a warrant. *United States v. Leon*, 468 U.S. 897, 918–23 (1984). In finding good faith, the district court noted Detective Becherer's choice to consult with the State's Attorney before filing the complaint. It also emphasized the many details Long had given Detective Becherer about Mr. Matthews's living situation. Based on this information, the district court concluded that the detective had strong reason to believe that probable cause existed to search Mr. Matthews's camper, the surrounding land, and the other buildings. The court acknowledged that Detective Becherer never "articulated the reasons for that belief in his affidavit or testimony" but thought the "exigency of the situation may have contributed to the error."[7]

---

[7] R.48 at 16.

Mr. Matthews promptly sought reconsideration of its ruling. As he saw it, the district court's analysis rested on facts that Detective Becherer knew but never had offered to the state court judge who had issued the warrant. He argued that the good-faith exception prohibited resort to any evidence not presented to the state court judge.

Relying on our decision in *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002), the district court agreed with Mr. Matthews that it should not have relied on evidence not presented to the state court judge. But it determined that the outcome was the same. The state court judge had heard Detective Becherer's testimony about intending to search the entirety of the Fin & Feather property, saw the pictures identified as that property, and knew that Detective Becherer had interviewed Long. The failure to connect expressly these pieces of evidence did not render unreasonable Detective Becherer's reliance on the state court judge's determination that there was probable cause to search the property.

Mr. Matthews pleaded guilty to possessing an unregistered short-barreled rifle, in violation of 26 U.S.C. § 5861(d), but conditioned his plea on his right to appeal the denial of his motion to suppress, *see* Fed. R. Crim. P. 11(a)(2). The district court accepted the plea and sentenced Mr. Matthews to three years' probation.

Mr. Matthews now appeals and challenges the denial of his motion to suppress. He maintains that the materials submitted to the state court judge lacked any indicia of probable cause, and, consequently, Detective Becherer could not have executed the warrant in good faith.

## II

## DISCUSSION

We review de novo whether the good-faith exception to the exclusionary rule applies to a search based on a warrant later determined to be invalid. *See United States v. Adams*, 934 F.3d 720, 725 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 824 (2020).

## A.

The basic principles that guide our analysis are well settled. The exclusion of evidence for a violation of the Fourth Amendment is a judicial remedy intended to deter police misconduct and thereby protect Fourth Amendment rights. *Leon*, 468 U.S. at 906. To tailor this exclusionary rule to the harm it seeks to prevent, the Supreme Court held in *Leon* that, despite the exclusionary rule, evidence obtained in violation of the Fourth Amendment is admissible if the officer who conducted the search reasonably relied on a warrant. *Id.* at 913; *United States v. Woodfork*, 999 F.3d 511, 519–20 (7th Cir. 2021).[8]

The determination of reasonableness, and therefore good faith, is an objective inquiry. *Leon*, 468 U.S. at 922. Although it is the Government's burden to demonstrate that the officer was acting in objective good faith, an officer's decision to obtain a warrant is prima facie evidence of his good faith. *Koerth*, 312 F.3d at 868. We therefore presume that an officer with a warrant was acting in good faith, and the defendant's burden is to rebut that presumption. *Edmond v. United States*, 899 F.3d

---

[8] The exception also applies in other situations not relevant here, including warrantless searches authorized by later-invalidated statutes or binding appellate precedents. *See Davis v. United States*, 564 U.S. 229 (2011); *Illinois v. Krull*, 480 U.S. 340 (1987).

446, 453 (7th Cir. 2018). The burden to show unreasonable reliance on a warrant is heavy by design. *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). A warrant is "a judicial mandate to an officer to conduct a search" that "the officer has a sworn duty to carry out" in a nearly "ministerial" fashion. *Utah v. Strieff*, 136 S. Ct. 2056, 2062–63 (2016) (quoting *Leon*, 468 U.S. at 920 n.21) (internal quotation marks omitted). A magistrate or judge is, moreover, typically far more qualified than a police officer to decide whether probable cause exists, *Malley v. Briggs*, 475 U.S. 335, 346 n.9 (1986), and so an officer "cannot ordinarily be expected to question a judge's probable cause determination," *United States v. Lickers*, 928 F.3d 609, 619 (7th Cir.), *cert. denied*, 140 S. Ct. 410 (2019). A magistrate's erroneous approval of a warrant certainly does not immunize an officer's subsequent search, *Malley*, 475 U.S. at 345–46 & n.9; *Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004), but it is still "no small feat" to overcome the presumption of good faith, *Lickers*, 928 F.3d at 619.

To overcome this heavy burden, a defendant must establish one of four situations:

> (1) the affiant misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth; (2) the magistrate wholly abandoned the judicial role and instead acted as an adjunct law-enforcement officer; (3) the affidavit was bare boned, "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) the warrant was so facially deficient in

> particularizing its scope that the officers could
> not reasonably presume it was valid.

*United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020) (quoting *Leon*, 468 U.S. at 923).[9] With these principles in mind, we now assess Mr. Matthews's submission.

## B.

Mr. Matthews contends that Detective Becherer's affidavit was so bare boned that he could not reasonably have believed it had established probable cause. He admits that "it is clear the affidavit established probable cause that [he] was engaged in criminal activity."[10] But, Mr. Matthews insists, there was nothing substantial to link him or that activity to all the buildings on the Fin & Feather property.

At the outset, we note explicitly the narrow boundaries of our inquiry. First, we pretermit the antecedent question of whether the warrant was supported by probable cause. The district court concluded the warrant was not supported by probable cause and therefore invalid. The Government does not challenge that ruling on appeal, and we decline to look past that concession on our own initiative. Although, as the district court recognized, it is often preferable to consider whether a warrant is supported by probable cause before

---

[9] We have restated these four possibilities in various ways, and sometimes count them as only three. *E.g.*, *Edmond v. United States*, 899 F.3d 446, 453 (7th Cir. 2018) (quoting *United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010)). Any difference in phrasing or organization is immaterial and reflects the significant overlap in the analysis of bare-boned affidavits and facially deficient warrants.

[10] Appellant's Br. 21.

addressing the officer's good-faith reliance, *see Koerth*, 312 F.3d at 866, a court is never obligated to decide the questions in that order and can address the officer's good faith without passing on the warrant directly. *See Leon*, 468 U.S. at 924–25; *Woodfork*, 999 F.3d at 519; *see also Pearson v. Callahan*, 555 U.S. 223, 241–42 (2009).

We also have no reason to revisit the district court's original ground for denying the motion to suppress. The Government does not challenge the district court's decision, on reconsideration, to limit its review to the evidence presented to the state court judge. *See Koerth*, 312 F.3d at 871. We limit our own review likewise and do not consider whether the portions of Detective Becherer's interview with Long that were never passed on to the state court judge filled any gaps in the affidavit.

Having articulated these limits to our inquiry, we now examine whether an officer in Detective Becherer's situation could rely reasonably on the warrant issued by the state court judge as valid authorization to search the Fin & Feather property.

As the Government acknowledges, Detective Becherer's supporting affidavit elided important details. On the other hand, it was far from boilerplate. It outlined for the judge's consideration the entirety of his investigation. Detective Becherer also sought the substantial assistance of the State's Attorney in the preparation of this affidavit and the other material submitted to the state court judge.

Mr. Matthews sees matters differently. In his view, the only pertinent evidence connecting him to the Fin & Feather property is Detective Becherer's conclusory belief that he

lived there and had access to all the buildings. Such a "[w]holly conclusory statement[]," he argues, could not reasonably be thought to provide probable cause to search the property.[11]

Mr. Matthews overstates his case. Detective Becherer's affidavit cannot fairly be characterized as wholly conclusory. It explained, albeit in broad strokes, how the officer came to his belief that Mr. Matthews lived on the property—"by personal interviews and … through other law enforcement officers."[12] His crucial omission was in the details, including clarification of which of the two identified sources he relied upon for his belief, and what articulable facts that source had given him to support that belief. This lack of detail is far more than a technicality and undermines substantially the probative weight of the affidavit. Nevertheless, the affidavit was more than a conclusion alone and truthfully informed the state court judge of the source of Detective Becherer's suspicions.

Mr. Matthews identifies a key shortcoming of the affidavit. It not only fails to explain how Detective Becherer knew he lived on the Fin & Feather property but fails to identify any witness who readily could be assumed to know his address. As far as the state court judge knew, Long had met Mr. Matthews only the one time at the store.

Nevertheless, we must agree with the Government that the record does support the good-faith finding made by the district court. When considering Detective Becherer's objective good faith we are looking for only "indicia" of probable

---

[11] Appellant's Br. 22 (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

[12] R.29-2 at 1.

cause. *Leon*, 468 U.S. at 923. As Mr. Matthews concedes, an indicium is a lesser quantum of evidence.[13] Less proof is required to permit good-faith reliance than to demonstrate probable cause to search a location in the first instance.

The affidavit here clears this lower good-faith threshold. The affidavit references twice "the residence of Suspect," provides pictures of a camper trailer behind a building (albeit without visible street numbers) and seeks authorization to search a camper trailer behind the Fin & Feather restaurant (among other, secondary locations).[14] One reasonable conclusion from these materials is that this camper and Mr. Matthews's residence are the same location. An officer seeking a warrant certainly should offer more and not leave it to rely on suppositions. However, we also cannot say that what Detective Becherer provided was so lacking in substance that he could not rely reasonably on the warrant that issued. Even with the demise of the local phone book that once inhabited a kitchen shelf in almost every American home, a person's address is rarely difficult to determine or the result of intensive investigation.

In short, we conclude that Detective Becherer's failure to specify a source for his knowledge that Mr. Matthews lived on the Fin & Feather property at 21000 North Emerald Road does not deprive the affidavit of all indicia of probable cause to search the property. *See United States v. Brown*, 832 F.2d 991, 995 (7th Cir. 1987).

---

[13] *See, e.g.*, *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002).

[14] R.29-2 at 2.

Mr. Matthews also argues that even if there were an adequate link between him and the Fin & Feather property, that link did not extend to every structure on the property. The affidavit did not explain why Detective Becherer understood Mr. Matthews to have control over all the buildings or show probable cause to search each one. He draws an analogy to a warrant that purports to authorize a search of an entire multi-unit apartment building. We have long recognized that an officer must make a distinct probable cause showing to search each residence of a multi-unit dwelling unless he presents reason to believe a suspect has control over the whole building.[15] Mr. Matthews contends that any reasonable officer would know the warrant here therefore failed this test.[16]

This argument adds little to the strength of Mr. Matthews's case. The analogy to a multi-unit building limps badly. It is common knowledge that the separate residences of an apartment building typically belong to different people. A reasonable judge or officer still might well assume that, here, the person living in a camper has control over the other structures on the property in much the same way as the owner of a house is most likely to control a shed or detached garage in close proximity to the house. An officer could reasonably

---

[15] *See United States v. White*, 416 F.3d 634, 637 (7th Cir. 2005); *Jacobs v. City of Chicago*, 215 F.3d 758, 771 (7th Cir. 2000) (holding rule was clearly established); *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955).

[16] *Cf. United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002) (recognizing that good-faith exception does not apply if "courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand").

defer to the magistrate's decision to authorize the search of all the buildings.[17]

Detective Becherer's objective good faith is further demonstrated by his decision to consult with the State's Attorney before preparing the complaint for a search warrant. "At its core, *Leon* is about encouraging responsible and diligent police work." *Lickers*, 928 F.3d at 620. Consulting with the State's Attorney or similar prosecutorial officer certainly is one step a responsible and diligent officer can take, and such consultation is, in many respects, exactly what *Leon*'s good-faith exception expects of law enforcement. *See United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010). The Supreme Court has held that attorney (and magistrate) approval of a warrant is not "dispositive," but it is "certainly pertinent in assessing whether [an officer] could have held a reasonable belief that the warrant was supported by probable cause." *Messerschmidt*, 565 U.S. at 554–55. That officers consulted with attorneys before seeking a warrant featured prominently in both *Leon*, 468 U.S. at 902, and its companion case, *Massachusetts v. Shepard*, 468 U.S. 981, 985 (1984). We have repeatedly

---

[17] Some courts have suggested that no separate showing of probable cause is necessary to search outbuildings adjacent to a residence and part of its curtilage. *See, e.g.*, *United States v. Finnigin*, 113 F.3d 1182, 1186 (10th Cir. 1997). We need not go so far in this case. *Cf. United States v. Contreras*, 820 F.3d 255, 261–62 (7th Cir. 2016) (noting that this court has not decided whether attached garage is considered "integral part" of home for purpose of warrantless search). It is enough to say that an objectively reasonable officer might view the burden of proving joint control over the outbuildings to be less than that necessary for a multi-unit residence.

credited an officer's choice to confer with an attorney before seeking a warrant as evidence of good faith.[18]

Detective Becherer here provided all the information he obtained in his investigation to the State's Attorney, and the State's Attorney prepared the complaint for a search warrant and the affidavit that Detective Becherer eventually signed.[19]

Mr. Matthews does not dispute the general principle that attorney involvement supports a finding of good faith. He argues, however, that attorney involvement cannot "compensate for an affidavit's glaring omission of information needed for probable cause."[20]

We agree. However, such a consultation is a relevant consideration in determining whether the warrant was facially deficient—or the supporting affidavit, bare boned—in the first place. *See Messerschmidt*, 565 U.S. at 556 ("The fact that

---

[18] *See, e.g.*, *Edmond*, 899 F.3d at 456; *Pappas*, 592 F.3d at 802; *United States v. Mitten*, 592 F.3d 767, 776 n.4 (7th Cir. 2010); *United States v. Merritt*, 361 F.3d 1005, 1012 (7th Cir. 2004), *vacated on other grounds*, 543 U.S. 1099 (2005). Our court is far from alone in this respect. *See, e.g.*, *United States v. Conant*, 799 F.3d 1195, 1202 (8th Cir. 2015); *United States v. Tracey*, 597 F.3d 140, 153 (3d Cir. 2010); *United States v. Otero*, 563 F.3d 1127, 1134 (10th Cir. 2009).

[19] The Government also asks us to consider the time pressure that Detective Becherer and the State's Attorney were operating under as reason to conclude any errors were good-faith negligence. (About fifteen hours elapsed between Mr. Long's call to the Sheriff's office and the search.) We decline the Government's invitation and do not decide today whether evidence can be admitted because an invalid warrant was obtained under exigent circumstances.

[20] Appellant's Reply Br. 6.

none of the officials who reviewed the application expressed concern about its validity demonstrates that any error was not obvious."). Here, the involvement of the State's Attorney in preparing and approving the warrant and affidavit simply bolsters our conclusion that these documents contained sufficient indicia of probable cause to permit Detective Becherer to rely on the warrant.

## Conclusion

Mr. Matthews has failed to rebut the presumption that the search was undertaken in good faith. The district court therefore applied properly the good-faith exception to the exclusionary rule. We therefore affirm the district court's denial of Mr. Matthews's motion to suppress.

AFFIRMED

HAMILTON, *Circuit Judge*, concurring. I join fully Judge Ripple's opinion for the court. I write separately only to note an issue that we need not decide here but that may arise in other cases applying the *Leon* good-faith exception to the exclusionary rule. The issue is whether and when a court may rely on evidence beyond the search-warrant application to decide whether the application was so lacking in indicia of probable cause as to make it unreasonable for an officer to rely upon the warrant. See *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984) (inquiry is objective and all circumstances may be considered). The district court here relied on *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002), to refuse to consider evidence not presented to the issuing state-court judge. The government has not challenged that refusal.

Our opinion in *Koerth* did not acknowledge that it was taking sides on an issue that has divided the circuits. On the other side of that question, see, e.g., *United States v. McKenzie-Gude*, 671 F.3d 452, 460 (4th Cir. 2011); *United States v. Proell*, 485 F.3d 427, 431–32 (8th Cir. 2007); *United States v. Martin*, 297 F.3d 1308, 1318–19 (11th Cir. 2002). Consistent with *Koerth* on this issue, see, e.g., *United States v. Knox*, 883 F.3d 1262, 1272 (10th Cir. 2018); *United States v. Frazier*, 423 F.3d 526, 535–36 (6th Cir. 2005); and *United States v. Hove*, 848 F.2d 137, 140 (9th Cir. 1988) (inquiry limited to four corners of search-warrant application). Finally, note that it is difficult to reconcile *Koerth*'s treatment of this question with *United States v. Dickerson*, 975 F.2d 1245, 1250 (7th Cir. 1992) (affirming application of *Leon* good-faith exception based on knowledge of on-scene officers that was not presented in the warrant application).