In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 24-2819

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTONIO CARRAZCO-MARTINEZ,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cr-00351-2 — **Sharon Johnson Coleman**, *Judge.*

———————————

ARGUED DECEMBER 12, 2025 — DECIDED FEBRUARY 5, 2026

———————————

Before EASTERBROOK, JACKSON-AKIWUMI, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* Antonio Carrazco-Martinez was suspected of drug trafficking as part of an operation based in Chicago with connections to Mexico. Authorized by warrants, the government gathered evidence against him using a cell-site simulator as well as a closed-circuit television ("CCTV") camera hidden in the garage of a house that he and his associates used to package and distribute illegal drugs and proceeds.

Following the investigation, Carrazco-Martinez was charged with participating in a narcotics distribution conspiracy in violation of 21 U.S.C. § 846 and possessing with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a). He asked the district court to suppress the evidence obtained from the cell-site simulator and CCTV camera, but both motions were denied. During the trial, Carrazco-Martinez objected to a jury instruction that permitted the jury to convict him without finding that his offenses involved a specific quantity of drugs. But this objection too was unsuccessful, and the jury ultimately convicted him of both charges.

On appeal, Carrazco-Martinez challenges the district court's denial of his motions to suppress. He also contends that the court should have sustained his objection to the jury instruction. For the reasons discussed below, we affirm.

**I**

The Drug Enforcement Agency began investigating a drug trafficking operation involving Carrazco-Martinez in May 2016. A few months later, in October, a confidential source for the government started communicating with Carrazco-Martinez, who had recently arrived in Chicago. Through these efforts, the government was able to identify and monitor Carrazco-Martinez's cell phone, but about a month later and after a major drug seizure, his phone went dark.

To identify his new phone and continue tracking his activities, the government applied for and received a warrant to use a "pen register" for thirty days. In a footnote and header,

the application specified that the type of pen register the government intended to use was a cell-site simulator.[1]

A cell-site simulator (sometimes known by the brand name "Stingray") works by mimicking a cell tower and forcing devices in its vicinity to connect and transmit their signaling information to it. *See United States v. Patrick*, 842 F.3d 540, 542–43 (7th Cir. 2016). Once connected, the simulator obtains identifying information of the device, such as the telephone number or subscriber number. A cell-site simulator is a marked evolution from more traditional pen registers and trap-and-trace devices that merely record dialed numbers. In addition to telephone numbers, simulators may also collect calls, texts, and images. *In re Warrant Application for Use of Canvassing Cell-Site Simulator*, 654 F. Supp. 3d 694, 703–04 & n.11 (N.D. Ill. 2023). In its brief and at oral argument, the government represented that, per Department of Justice policy, the

---

[1] The November 21, 2016 warrant application noted:

> [B]ecause a cell-site simulator constitutes a "pen register" device within the meaning of Title 18, United States Code, Section 3127(3), in that it is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted," and because the information it obtains does not include the contents of any communication, … it is believed that … the information likely to be obtained from the use of a pen register device in the form of electronic investigative techniques that capture and analyze signals emitted by cellular telephones is relevant to the ongoing criminal investigation.

Dkt. 363-1 at 2–3 & n.1. "Dkt." refers to the docket number in the district court record.

simulator's ability to collect any information beyond simple identifying information was disabled,[2] and if any such information had been collected, it was deleted without review.[3]

Once law enforcement officers were able to locate Carrazco-Martinez's whereabouts through surveillance, they deployed a cell-site simulator six times over a two-day period near his location. And, by comparing the phone numbers collected on those occasions, the agents were able to identify Carrazco-Martinez's new phone number and obtained permission to track it.

Using this information, the officers identified a single-family home with an attached garage in Carpentersville, Illinois, that Carrazco-Martinez used as a stash house. The agents then applied for and received a warrant to install a CCTV camera, which recorded video but not sound, in the garage for thirty days. The warrant was extended twice, ending in February 2017 when Carrazco-Martinez left the house.

---

[2] The government also filed a post-argument letter clarifying that "government counsel is unaware and the record is silent as to whether any cell site simulators, let alone the one used here, can intercept contents of communications. Even assuming the cell site simulator used in this case did have such capability, however, the record suggests that any such capability would have been disabled or otherwise made nonfunctional." App. Dkt. 40 at 1. "App. Dkt." refers to the docket number in the appellate court record.

[3] The warrant application states that the government will delete "any information from a cellular device other than any cellular telephone being used by [Carrazco-Martinez]" and will "make no investigative use of it, absent further order of the Court." Dkt. 363-1 at 4–5.

In 2019, Carrazco-Martinez was charged with conspiracy to possess with intent to distribute drugs in violation of 21 U.S.C. § 846. In 2021, Carrazco-Martinez moved to suppress the evidence from the cell-site simulator[4] and the CCTV camera.[5] The district court denied the motions, holding that the good faith exception precluded suppression of evidence from both. In 2022, the government filed the Second Superseding Indictment and added a charge of possession with intent to distribute cocaine and heroin in violation of 21 U.S.C. § 841(a).

Carrazco-Martinez's trial began on April 17, 2023. As the parties finalized jury instructions, the government proposed a non-pattern instruction (referred to as "Instruction 28"). This instruction informed the jury that the government was "not required to prove … the specific quantity" charged in the indictment in order to prove Carrazco-Martinez's guilt as to the two counts. Rather, it provided that the government only needed to prove beyond a reasonable doubt that the counts involved "some measurable quantity of a controlled substance."

Carrazco-Martinez objected, arguing that the instruction was unnecessarily confusing, especially alongside Instruction 29, which directed the jury to "determine the amount of cocaine and heroin the government has proven was involved in

---

[4] Whether the use of the cell-site simulator constitutes a Fourth Amendment search remains an open question, but we analyze it as such because the government applied for a warrant as if it were.

[5] Carrazco-Martinez also moved to suppress evidence collected via a pole camera installed across the street from the Carpentersville house. Because he does not appeal the district court's denial as to this evidence, we do not discuss it.

the [particular] offense." Additionally, in his view, the instruction violated *Alleyne v. United States* where the Supreme Court held that any fact increasing the mandatory minimum sentence for a crime "constitutes an element of a separate, aggravated offense that must be found by a jury." 570 U.S. 99 (2013), 115 (2013). The district court overruled the objection.

The jury eventually convicted Carrazco-Martinez of both counts. He subsequently filed a motion for a judgment of acquittal and a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. The district court denied the motion.

## II

Now on appeal, Carrazco-Martinez contends that the district court erred by denying his request to suppress the evidence gathered from the cell-site simulator and CCTV camera. He also believes that Instruction 28 is contrary to law.

### A. Suppression Motions

When considering a district court's denial of a suppression motion, this Court reviews the district court's factual findings for clear error and its legal conclusions *de novo*. *See United States v. Eymann*, 962 F.3d 273, 281 (7th Cir. 2020) (citations omitted).

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To "compel respect for [that] constitutional guaranty," *Davis v. United States*, 564 U.S. 229, 236 (2011) (citation omitted), the Supreme Court has fashioned the exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial, *Herring v. United States*, 555 U.S. 135,

139 (2009). But, because the exclusionary rule "is designed primarily to deter unconstitutional conduct," *United States v. Curtis*, 901 F.3d 846, 849 (7th Cir. 2018), it does not apply when law enforcement has relied in good faith on a facially valid warrant, *United States v. Hammond*, 996 F.3d 374, 384 (7th Cir. 2021) (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).

What is more, "an officer's decision to obtain a warrant creates a presumption that the officer acted in good faith." *United States v. Woodfork*, 999 F.3d 511, 519 (7th Cir. 2021) (quoting *United States v. Yarber*, 915 F.3d 1103, 1106 (7th Cir. 2019)). Overcoming this presumption is a "heavy burden," which a defendant can meet in one of several ways. He can show that the affiant "misled the magistrate with information the affiant knew was false or would have known was false but for the affiant's reckless disregard for the truth." *United States v. Matthews*, 12 F.4th 647, 653 (7th Cir. 2021) (quoting *United States v. Rees*, 957 F.3d 761, 771 (7th Cir. 2020)). A defendant can also rebut the presumption by establishing that "the judge issuing the warrant abandoned his detached and neutral role," *Woodfork*, 999 F.3d at 519 (citations omitted), that "the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable," *id.*, or that "the warrant was so facially deficient in particularizing its scope that the officers could not reasonably presume it was valid," *Matthews*, 12 F.4th at 653 (quoting *Rees*, 957 F.3d at 771).

Two warrants are at issue here—one for the cell-site simulator and another for the CCTV camera. So, because both warrants were issued by a judge, we presume that the agents who relied on the warrants when gathering the evidence in

question acted in good faith. The question then is whether Carrazco-Martinez has successfully rebutted this presumption.[6]

Turning first to the cell-site simulator warrant, Carrazco-Martinez posits that the government misled the judge into thinking that it was seeking to use a run-of-the-mill pen register when it actually intended to employ a Stringray device. But the warrant application expressly requested authorization to use a cell-site simulator and explained how it fell within the statutory definition of a pen register under the Electronic Communications Privacy Act of 1986, 18 U.S.C. § 3127(3).[7] Dkt. 363-1 at 2–3 & n.1.

As for the CCTV camera, Carrazco-Martinez argues that the warrant was facially overbroad, exceeded any probable cause the government offered, and failed to comply with the requirements of Title III as set forth in 18 U.S.C. § 2518. That

---

[6] Carrazco-Martinez does not argue that the good faith exception does not apply to evidence obtained using cell-site simulators or CCTV surveillance. Thus, despite some disagreement on the issue, *see Patrick*, 842 F.3d at 552 (Wood, C.J., dissenting) (collecting cases), we do not reach it here and assume the exception applies to both warrants at issue in this case.

[7] That provision states:

> [T]he term "pen register" means a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, provided, however, that such information shall not include the contents of any communication[.]

18 U.S.C. § 3127(3).

said, the only argument he meaningfully develops is the last one.

As we have noted elsewhere, "because television surveillance is potentially so menacing to personal privacy, we want to make clear our view that a warrant for television surveillance that did not satisfy the four provisions of Title III that implement the Fourth Amendment's requirement of particularity would violate the Fourth Amendment." *United States v. Torres*, 751 F.2d 875, 885 (7th Cir. 1984). Among the four is the requirement that the warrant application contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c); *see Torres*, 751 F.2d at 883–84. In Carrazco-Martinez's view, the government's warrant application for the CCTV camera falls well short.

Carrazco-Martinez notes, for instance, that by the time the government submitted its application, it had already identified at least eighteen other individuals involved in the drug trafficking operation. Furthermore, the government had access to a pole camera across the street from the stash house and had used it to surveil numerous persons going into and out of the house. In short, Carrazco-Martinez argues, the government "greatly overstated" the necessity of having a CCTV camera in the garage and failed to explain why its other investigative efforts "reasonably appear to be unlikely to succeed." 18 U.S.C. § 2518(1)(c).

Carrazco-Martinez does not explain precisely how the purported lack of necessity rebuts the government's good faith reliance on the warrant, but his argument seems to be that, by overstating the need for the CCTV camera, the

government misled the judge with information it knew to be false or should have known to be false. But, contrary to Carrazco-Martinez's contention, the government's affidavit explains why it believes the CCTV camera was necessary. For example, the affidavit notes the government's belief that the international scope of the operation rendered traditional investigative techniques less effective in identifying the perpetrators. The supporting affidavit also indicates the government's belief that although it was able to obtain information about persons who were involved in the transportation of the drug proceeds by intercepting electronic communications and conducting physical surveillance, it needed more information regarding those who actually handled and transported the drugs to prosecute the offenders. Carrazco-Martinez offers no facts contradicting these statements and thus falls short of satisfying the heavy burden to overcome the presumption of good faith. In other words, he offers no evidence that the government misled the issuing judge with false information or disregarded the truth in its statements.

Carrazco-Martinez likewise fails to offer any evidence that the issuing judge abandoned neutrality, that the warrants were so lacking that it would have been unreasonable for an officer to believe there was probable cause, or that the warrants were so deficient in particularizing their scope that an officer could not presume their validity. As such, Carrazco-Martinez has failed the rebut the presumption of good faith as to either the cell-site simulator warrant or the CCTV camera warrant.

**B. Jury Instruction**

Turning to the jury instruction, we review *de novo* whether the instruction "fairly and accurately summarize[s] the law."

*United States v. Quintero*, 618 F.3d 746, 753 (7th Cir. 2010) (citation modified). "If it does, we examine the district court's particular phrasing of the instruction for abuse of discretion [and] … we will reverse only if it appears both that the jury was misled and that the instructions prejudiced the defendant." *United States v. Anzaldi*, 800 F.3d 872, 880 (7th Cir. 2015) (quoting *United States v. Brown*, 726 F.3d 993, 997 (7th Cir. 2013)) (citation modified).

Instruction 28 states:

The government is not required to prove that the offenses charged in [the relevant counts] involved the specific quantity of a substance alleged in those counts in order to prove a defendant's guilt on any of those counts. However, the government must prove that each of these counts involved some measurable quantity of a controlled substance.

It was followed by Instruction 29, which told the jury that, if it found Carrazco-Martinez guilty of either drug count with which he was charged, it must also determine "the amount of the cocaine and heroin the government has proven was involved in the offense."

Finding the two instructions confusing when read in tandem, Carrazco-Martinez argues that Instruction 28 violated his Fifth and Sixth Amendment rights to due process and to a fair trial by an impartial jury. *See United States v. Gaudin*, 515 U.S. 506, 510 (1995) ("We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."). For support, he points to *Alleyne*, which requires the jury to find

beyond a reasonable doubt every necessary element of the charged offense, including any fact that increases the mandatory minimum sentence. 570 U.S. at 116; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

The problem with this argument is that drug quantity is not an element of either 21 U.S.C. § 846 or § 841(a). *See United States v. Martinez*, 518 F.3d 505, 509 (7th Cir. 2008) ("As we have said repeatedly, the drug quantity is not an element of the crimes defined by § 846 or § 841(a)(1)."). Rather, drug quantity is a sentencing factor that must be found by a jury beyond a reasonable doubt when it increases the mandatory minimum sentence. *See United States v. Claybrooks*, 729 F.3d 699, 708 (7th Cir. 2013) (reaffirming that "a defendant's mandatory minimum sentence must be determined by the drug quantity described in the jury's special verdict form."). Thus, in order to trigger the 10-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A), the government had to prove (and the jury had to find) beyond a reasonable doubt that Carrazco-Martinez's offenses involved at least five kilograms or more of a mixture and substance containing a detectible amount of cocaine or one kilogram or more of a mixture and substance containing a detectible amount of heroin. Thus, Instructions 28 and 29 were correct statements of law, and there is no reason to believe that the jury disregarded them. *See United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015) (we

"assume that the jury follows the instructions given" absent "anything in the record to overcome that presumption").[8]

*     *     *

For the foregoing reasons, the judgment is AFFIRMED.

---

[8] As Carrazco-Martinez points out, the district court was initially concerned that Instruction 28 might confuse the jury but it eventually concluded that, in conjunction with Instruction 29, it adequately informed the jury about the governing law. We think such statements of concern signify a careful judge, not a careless one.